Samuel H. Hofstadter, J.
The defendant, Executive Equipment Corporation (Executive), engaged in the business of leasing automobiles, on December 20,1956, entered into a written agreement with the defendant Amity Dyeing & Finishing Company, Inc. (Amity), by which Executive leased to Amity a 1957 Cadillac sedan for 24 months from the date of its delivery. This lease obligated Amity to provide Executive with liability insurance of $250,000/$500,000. Executive thereupon ordered a new car which was delivered to Amity pursuant to the lease several months later. At the time of delivery of the car to Amity, Executive was carrying a large policy on its fleet of automobiles with Hardware Mutual Casualty Company (Hardware Mutual) and received from Hardware Mutual a certificate showing liability coverage of the vehicle leased to Amity under Executive’s over-all policy.
In June, 1957 Amity, through its own brokers, Felsen Associates, Inc. (Felsen) secured from the plaintiff, Zurich Insurance Company (Zurich), a liability policy on the automobile leased from Executive. This policy, effective for one year from June 11, 1957, apparently complied with the agreement between Executive and Amity, in that it provided Executive with coverage in the amounts specified. Though Amity served an answer, it did not participate in the trial and the original policy, presumably delivered to it, was not produced. The critical issue whether Executive had a copy or a certificate of the issuance of this policy in its possession before the occurrences out of which the present controversy arises will be discussed later.
On April 15, 1958, while the foregoing policy issued by Zurich was in effect, the Cadillac automobile leased to Amity and operated 'by the defendant Muzio, one of Amity’s employees, struck the infant defendant, David Martinez. Executive was informed of the happening of this accident and the following day Muzio at its office signed a motor vehicle accident report on form MV104. Executive, in the belief that its general insurer, Hardware Mutual, was the carrier on the policy covering the car involved in this accident, forwarded a copy of the motor vehicle accident report to Hardware Mutual» The record throws *439 no light on what Hardware Mutual did on receipt of the report. There is no evidence of any communication from it to Executive at that tinte. The servieé manager gave testimony which I accept that Hardware Mutual never returned the report to Executive.
On August 14, 1958 the summons and complaint in an action in this court by the infant’s father (the defendant Paul Martinez), as guardian and individually against both Executive and Muzio were served on Exécutive, which immediately sent the same to Hardware Mutual. That company returned the papers to Executive; after contacting Amity, Executive turned them over to Félsen, Amity’s insurance broker, by whom they were sent oh to’ Zurich. Thé summons and complaint reached Zurich oh August 21, 1958 and this is, só far as the record discloses, the earliest notice of the accident received by it.
Zurich, however, did not at once disclaim liability because of the now asserted late notice of the accident. Instead, it. sent an investigator to obtain a written statement from Executive. Though instructed to cover the delayed notice as well as the adcident, this investigator told Executive’s service manager that the written statement was a routine matter and that Zurich was going to protect Executive’s rights. The signed statement thus procured is devoted to the delayed notice quite as much as to the facts of the áccidént.
By letter of September 19, 1958, Zurich gave both Executive and Múzió formal notice of its reservation of all rights under its policy, including that of withdrawing at any time from the defense of the suit and disclaiming liability under its policy. Thereafter Zurich instituted the present action against Martinez, as guardian and individually, Muzio, Executive and Amity, in which it seeks a declaratory judgment relieving it of liability undér the policy by reason of the late notice.
Zurich founds its- asserted discharge from liability under the policy on breach by the insured of the following conditions:
“ 7. notice of accident. When an accident occurs written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information representing the time, place and circumstances of the accident, thé names and addressés of the injured and of available witnesses.
“ 8. — notice of claim or suit — Coverages A and G. If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.”
*440 Subdivision 1 of section 167 of the Insurance Law prescribes that no policy insuring against liability for injury to person shall be issued unless it contains certain provisions or provisions equally or more favorable to the insured and judgment creditors. Among these are the following:
“ (c) A provision that notice given by or on behalf of the insured, or written notice by or on behalf of the injured person or any other claimant, to any licensed agent of the insurer in this state, with particulars sufficient to identify the insured, shall be deemed notice to the insurer.
“(d) A provision that failure to give any notice required to be given by such policy within the time prescribed therein shall not invalidate any claim made by the insured or by any other claimant thereunder if it shall be shown not to have been reasonably possible to give such notice within the prescribed time and that notice was given as soon as was reasonably possible.”
While the foregoing provisions are not contained in the Zurich policy before us, by virtue of section 143 of the Insurance Law, the policy is enforcible as if it did conform to the statutory requirements. Therefore, the policy requirement of notice “ as soon as practicable” means no more than “as soon as reasonably possible ”.
It is now settled that section 167 of the Insurance Law confers on the injured person an independent right to give notice, and that if he gives notice as soon as it was reasonably possible for him to do so, he may maintain an action against the insurer, despite the insured’s failure to give notice (Lauritano v. American Fid. Fire Ins. Co., 3 A D 2d 564, 568, affd. 4 N Y 2d 1028). As Justice (now Presiding Justice) Botein tersely observed for the majority in Lauritano {supra): “ When the injured party has pursued his rights with as much diligence ‘ as was reasonably possible ’ the statute shifts the risk of the insured’s delay to the compensated risk-taker who can initially accept or reject those for whom it will bear such risks ”.
The rule is equally established that in determining whether notice has been given as soon as reasonably possible, the standards to which the injured party is held are less rigorous than those applied to the insured (Lauritano v. American Fid. Fire Ins. Co., supra; Marcus v. London & Lancashire Ind. Co. of America, 6 A D 2d 702, affd. 5 N Y 2d 961; Jamestown Mut. Ins. Co. v. Valentin, 10 Misc 2d 606; Matthews v. Glens Falls Ins, Co., 21 Misc 2d 1079). Ordinarily, the question whether notice has been timely is one of fact (Melcher v. Ocean Acc. & Guar. Corp., 226 N. Y. 51) and only when the delay is found *441 to be wholly unexcused is the notice held too late a,s matter of law. Deso v. London & Lancashire Ind. Co. of America (3 N Y 2d 127) is a case of the latter kind, but it may be noted that even in Leso the reversal of the Appellate Division’s unanimous decision upholding a jury verdict for the plaintiff was by a divided court.
When the foregoing principles are applied to this case, there can be no doubt that the question whether, as to the Martinez defendants, notice to Zurich was given as soon as reasonably possible is one of fact. The evidence establishes that the attorney for Martinez acted with due diligence throughout. Unable at first to ascertain from the Bureau of Motor Vehicles the names and addresses of the owner and operator of the vehicle which had hit the infant David Martinez, he turned to the Police Department for this information. As soon as he learned in May, 1958 from the police report that Executive owned the automobile, he telephoned to an officer of Executive who told him that they were familiar with the accident, were insured and had notified the insurance company. The attorney was fully justified in the circumstances in relying on this statement of Executive, an apparently substantial and reputable business concern. It was not until much later during the course of an examination in the Martinez action that the attorney learned that the vehicle had been leased to Amity by Executive. Any further inquiry of Executive in May would merely have revealed Hardware Mutual as the insurer, for at that time Executive still believed this to be the fact. Moreover, the motor vehicle accident report signed by Muzio and forwarded to the Bureau of Motor Vehicles by Executive in April, 1958 also gave Hardware Mutual as the insurance carrier. The diligence of the attorney is to be tested in the light of the circumstances facing him at the time, not by those disclosed by the later proof. It is not shown nor is there reason to believe that the attorney could have learned that Zurich was Executive’s insurer sooner than Executive itself became aware of it — after service of the papers in the action and their return to Executive by Hardware Mutual. Martinez, therefore, was in no position to give Zurich notice earlier than August 21,1958 when it received notice from Executive. Nor has Zurich shown any prejudice. Accordingly, it is ruled that, in respect of the Martinez defendants, the notice was timely and the plaintiff is bound, within the limits of the policy, to pay any judgment recovered by them.
It is unnecessary to determine whether the notice so found as to the Martinez defendants to have been given seasonably inures to the benefit of the insured, despite failure of the latter to give *442 due notice, for here- it must he found that the insured also gave timely notice. Zurich endeavored to establish that on April 15, 1958, the day on which the Martinez boy met with his accident, Executive had in its possession either a copy of the policy or a certificate of its issuance. It failed in this effort. The policy was obtained on the order of Amity, not Executive, through Felsen, Amity’s broker. Neither Felsen nor his employee, Rosenthal, testified that the policy or a certificate had been sent to Executive; each relied on assumed compliance with office routine. Nonobservance of this supposed routine was demonstrated by proof that the certificate of the renewal policy, effective from June 11,1958, was not sent to Executive by Felsen until September 29,1958, almost four months after the renewal took effect, and then only at Executive’s request. By then Zurich was already on notice and had sent Executive its letter of reservation. Felsen was unable to produce a copy of any contemporaneous letter of transmittal of thg 1957-1958 policy or certificate to Executive and the documentary proof in connection with the issuance of both the original and the renewal policies carries the address of Amity in Queens but not that of Executive in Brooklyn. Executive’s service manager gave testimony, which I credit, that Executive did not have in its file any indication of insurance on the automobile in question by Zurich and learned of it through Amity only after the return of the summons and complaint by Hardware Mutual in August, 1958. Accordingly, I find that Executive did not know of the existence of the Zurich insurance until Angust, 1958, just before it forwarded the summons and complaint to Zurich.
Just as ignorance of injury flowing from an accident (Melcher v. Ocean Acc. & Guar. Corp., 226 N. Y. 51), so, under the authorities, absence of knowledge on the part of the insured of the insurance coverage may excuse delay in giving notice (Greaves v. Public Ser. Mut. Ins. Co., 4 A D 2d 609, affd, 5 N Y 2d 120; Marcus v. London & Lancashire Ind. Co. of America, 6 A D 2d 702, affd. 5 N Y 2d 961, supra; Gluck v. London & Lancashire Ind. Co. of America, 2 A D 2d 751, affd. 2 N Y 2d 953). Deso (3 N Y 2d 127, 131, supra) recognized unawareness of insurance coverage as an acceptable excuse for delayed notice and distinguished Gluck (supra) on that ground. The court noted that in Gluck “ once thg insured was alerted to the contract coverage he gave prompt notice,” In Greaves (supra) the accident occurred on February 15, 1955 and notice was first given by letter of August 11, 1955, almost six months later, enclosing a summons and complaint served in July, The plaintiff, an employee of a carpet concern, while loading carpet *443 on a truck, had injured an employee of the trucker; upon service of the summons and complaint in the action brought against him by the injured person, he turned the papers over to his own employer. When the latter’s insurance carrier refused to defend him, he learned for the first time that he was an additional insured under the trucker’s policy, since loading was a use of the truck within the policy. On these facts, not passed on by the trial court, the Appellate Division found the plaintiff entitled to declaratory judgment that he had given the trucker’s insurer notice as soon as practicable, as required by the policy.
Gluck (supra) reversed the direction of a verdict for the defendant in an action on an unpaid judgment recovered against the insured owner of a fuel oil truck. On October 24, 1947, the plaintiff’s intestate fell over a fuel oil hose stretched from the truck across the sidewalk to a building and died of the resultant injuries. Liability was resisted because of asserted late notice, first given on March 4, 1948. The named insured testified that he did not give notice promptly because he did not think he was insured for the accident; the policy covered the use of the truck, including loading and unloading. The court found this excuse to present a triable issue whether the notice was timely; the Court of Appeals affirmed and gave judgment absolute for the plaintiff on the stipulation.
In Marcus v. London & Lancashire Ind. Co. of America (6 A D 2d 702, affd. 5 N Y 2d 961, supra) the delay was even longer. The plaintiff child had recovered a substantial judgment against her grandmother in an action which the insurer refused to defend. She suffered burns on March 18, 1956, from the spilling over her of hot coffee through the grandmother’s negligence. The defendant had issued a comprehensive personal liability policy to the child’s parents as the named insured; the grandmother was covered as an additional insured, being a resident of the household. Written notice was given on November 1, 1956; the father attributed his failure to give earlier notice to the fact that he then first realized through accident that he was covered. The grandmother gave a statement that she had no policy to cover such an accident and hence had not notified anyone. Both the Appellate Division and the Court of Appeals affirmed the denial of the defendant insurer’s motion for summary judgment. Again, the belated realization of insurance coverage was ruled to create a triable issue whether the delay, in the circumstances, was excusable.
So here we have the issue to be determined by the trier of the facts whether Executive’s failure to give notice sooner than it did may be excused. As in the cases just reviewed, the delay *444 was caused by Executive’s ignorance of its insurance coverage — of the fact that Zurich had issued a policy to it. The situation was not of its making but was due rather to the fact that neither Amity nor its broker Felsen had, by sending it a duplicate policy or a certificate or otherwise, informed it that insurance had been procured from Zurich. Since Executive already had its fleet policy, it was not without insurance on the vehicle leased to Amity. In the circumstances, its misapprehension of, and its failure to, learn the true situation earlier than it did is completely understandable. I can see no difference in principle between the nonrealization of existing coverage found to excuse delayed notice in the foregoing cases and Executive’s not knowing that Zurich had replaced Hardware Mutual as its insurer. In each instance unawareness of a material factor, related directly to the insurance, is responsible for the delay. Certainly Executive is far less blameworthy here for not discovering the Zurich policy earlier, than was the Marcus family (6 A D 2d 702, affd. 5 N Y 2d 961, supra) in letting months go by before coming to the realization that the policy they had in their possession all the time covered the domestic accident of which the child was the victim.
It has already been noted that Zurich has shoAvn.no prejudice. Accordingly, I find that the notice by Executive Avas given as soon as practicable and complied fully with the requirements of the Zurich policy. It follows that Zurich is obliged to defend all the insured and to respond to any recovery in the Martinez action, within the limits of its policy. The defendants are entitled to a declaratory judgment to that effect.
The motion of Executive to conform the pleadings to the proof is granted. Its motion to strike Exhibit ■“ J ” and the paper attached to it is denied, with exception to Executive.